IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Charles Mavins, Jr., ) C. A. No. 2:09-0483-HFF-RSC
)
       Plaintiff, )
)
  -versus- ) **REPORT AND RECOMMENDATION**
)
Doctor McFadden, Nurse Sheryl )
Smith, Dentist Dr. Perryman, )
Dr. Cherry, Psychiatrist, in )
individual and official )
capacities, )
)
       Defendants. )

This civil rights action brought by a state prisoner proceeding pro se and in forma pauperis pursuant to 42 U.S.C. § 1983[1], is before the undersigned United States Magistrate Judge for a report and recommendation on the defendants' motions for summary judgement. 28 U.S.C. § 636(b).

On February 26, 2009, the plaintiff, Charles Mavins, Jr.,

---

[1] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of Section 1983, titled a civil action for deprivation of rights reads in relevant portion: the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. § 1983.

1

sued Dr. McFadden, Nurse Sheryl Smith, Dentist Dr. Perryman, Doctor Cherry, Psychiatrist, and alleged that he did not receive adequate medical and dental care while he was incarcerated at the Lexington County Detention Center (LCDC) beginning in May 2008. Mavins claims that the defendants' failure caused his mental health to deteriorate to the point that he assaulted a correctional officer. He seeks proper medical care and damages.

On May 12, 2009, Defendant Perryman filed a motion for summary judgment along with his affidavit and the plaintiff's dental records. On May 13, 2009, the plaintiff was provided a copy of the defendant's summary judgment motion and exhibits and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

On October 6, 2009, Defendants McFadden, Perryman, and Smith filed a motion for summary judgment, and Defendant Cherry filed a separate motion for summary judgment. On October 7, 2009, Plaintiff was provided the motions and given another Roseboro order.

Mavins filed an opposition to the motions on November 4, 2009[2]. Hence it appears consideration of the motions is

---

[2] Mavins' response did not comply with August 7, 2009, order of the undersigned. (Docket entry 49). Although the court would be justified in dismissing the action for failure to abide by the

appropriate.

**SUMMARY JUDGMENT STANDARD**

Pursuant to Fed.R.Civ.P. 56(c), a district court must enter judgment against a party who, "after adequate time for discovery ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law," entry of summary judgment is mandated. Fed.R.Civ.P. 56(c). To avoid summary judgment on a defendant's motion, a plaintiff must produce evidence creating a genuine issue of material fact. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986). In determining whether a genuine issue of material fact is in dispute, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, at 255, 106 S.Ct. at 2513-14.

---

order, consideration of the matter on the merits will also be undertaken.

3

**FACTS**

The facts either undisputed or taken in the light most favorable to the plaintiff as the non-moving party and all reasonable inferences drawn in favor of the plaintiff are as follow.

Plaintiff's undisputed voluminous medical records reveal that Plaintiff is a single male with a history of psychiatric illnesses and polysubstance abuse. Plaintiff has received psychiatric medications since he was 16 years old, and has had multiple hospitalizations and incarcerations. (See Def. Ex. B, Plaintiff's Medical Records). He received extensive treatment for his medical needs while housed at the LCDC including assessments, consultations, doctor care, nursing care, dental care, and has received a plethora of medications.

According to the records, Plaintiff requested a second meal tray the morning of May 8, 2008, and became physically violent when this request was not granted. Plaintiff threw a milk carton which struck a correctional officer, and attempted to throw his meal tray before being physically restrained. Plaintiff then began kicking and head-butting the officer after which he received one taser application, and was subdued. Photographs were taken of the plaintiff following this altercation. He was placed in restraints, which were appropriately checked by medical personnel after which the plaintiff was transferred to the

4

Lexington Medical Center Emergency Department on May 9, 2008, for evaluation. His diagnosis of schizophrenia was confirmed, and he was returned to the LCDC. (Def. Ex. B; CCS 0359). Plaintiff's sworn complaint indicates that "street charges" for assault are pending against him and he could receive a fifteen (15) year sentence if he is convicted. He claims that his lack of proper medical care caused him to assault the correctional officer.

**LAW RELATED TO MEDICAL CARE AFFORDED PRISONERS[3]**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on one who has committed a crime. See, U.S. Const. Amend. VIII. Accordingly, a prisoner makes out a claim under the Eighth Amendment if he can establish that the prison medical personnel responsible for his care were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976); Amos v. Maryland Dep't of Pub. Safety & Correctional Servs., 126 F.3d 589, 610 (4th Cir. 1997), vacated

---

[3] It is unclear whether Mavins was a prisoner or a pretrial detainee at times relevant to the complaint. However, the same standard set forth above applies to him if he was a pretrial detainee. While a pretrial detainee's rights with respect to claims for deliberate indifference to serious medical needs are prohibited by the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment, with respect to such claims, a pre-trial detainee's rights are co-extensive with a convicted prisoner's Eighth Amendment rights. Hill v. Nicodemus, 979 F.2d 987 (4th Cir. 1992). Therefore, the plaintiff must demonstrate deliberate indifference to a serious health need in order to prevail in a civil rights action under § 1983. Estelle v. Gamble, 429 U.S. 97 (1976); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988)

5

in part on other grounds, 118 S.Ct. 2339 (1998). These requirements go beyond even a showing of negligence, and requires Plaintiff to establish the defendants acted with an indifference as would "offend evolving standards of decency." Id.

In a § 1983 claim, whether a medical provider has been deliberately indifferent to a prisoner's serious medical need is a two part inquiry. First, the prisoner must show that he was deprived of an objectively serious human need. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). Second, the plaintiff must demonstrate that the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991).

Farmer v. Brennan, 511 U.S. 825 (1994) and cases interpreting Farmer, make clear that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific serious risk of harm confronting the inmate. See, Farmer, 511 U.S. at 837, 114 S.Ct. at 1978-79 (stating that "the official must both be aware that a substantial risk of serious harm exists, and he must also draw the inference").

Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979. Prison officials

must know of and disregard an objectively serious condition, medical need, or risk of harm. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844, 114 S.Ct. at 1982; see Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997) (holding that prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to a specific risk of harm).

In Estelle v. Gamble, the prisoner contended that other examinations should have been conducted by the prison's medical staff and that X-rays should have been taken. The Supreme Court pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." Id. at 105. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988); Cf. Whitley v. Albers, 475 U.S. 312, 320 (1986)(a state's responsibility to attend to the medical needs of prisoners does not ordinarily clash with other equally important governmental responsibilities).

Likewise, constitutionally, state prisons are not required to furnish prisoners the best of care, only reasonable care.

7

Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977). The Constitution also does not guarantee a prisoner the treatment of his choice. Jackson v. Fair, 846 F.2d 811 (1st Cir. 1988). The mere failure to treat all medical problems to a prisoner's satisfaction, even if actual medical malpractice is involved, is insufficient to support a claim under § 1983. Sosabee v. Murphy, 797 F.2d 179 (4th Cir. 1986). Even if plaintiff could establish negligence in his medical treatment, his cause of action would be in negligence against the defendants. Section 1983 does not provide for a remedy for violation of state law, but only for violations which rise to the level of unconstitutional deprivation. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, supra. Negligence simply is not actionable under 42 U.S.C. § 1983. Daniels v. Williams, 474 U.S. 327 (1986).

## **DISCUSSION**

A review of the record and relevant case law reveals that the defendants' motions should be granted and this matter ended.

Defendants McFadden, Smith, and Perryman assert that they are employees of Correct Care Solutions, a private corporation under contract to the state to provide medical care to detainees and prisoners. As such, they argue that their actions were not taken "under color of state law" as is necessary to state a claim

under 42 U.S.C. § 1983. (Motion for summary judgment Doc. 57, pgs. 14-16). The court should reject this argument.

Private physicians hired by the state to provide medical care to prisoners are state actors because they were hired to fulfill the state's constitutional obligation to attend to necessary medical care of prison inmates. West v. Atkins, 487 U.S. 42, 53, n. 10, 57, 108 S.Ct. 2250, 2257, n. 10, 2260, 101 L.Ed.2d 40 (1988). The Supreme Court noted that the state cannot avoid its constitutional responsibilities by delegating a public function to private parties. Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809 (1953) (private political party's determination of qualifications for primary voters held to constitute state action). Further, health care providers who treat a prisoner acts under color of state law even when there is no contractual relationship between the state run facility and the health care provider. Conner v. Donnelly, 42 F.3d 220 (4th Cir. 1994). The defendants' contention should fail.

These defendants also assert that the action should be dismissed because the plaintiff has not shown that he exhausted his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). They assert that Plaintiff was required to appeal the denial of grievances he lodged at the LCDC to the Administrative Law Judge (ALJ). (Motion for summary judgment Doc. 57, pgs. 16-19). The argument should fail.

First, while the defendants argued that the action should be dismissed because of Plaintiff's lack of proof of exhaustion, a prisoner's failure to exhaust administrative remedies is an affirmative defense to be pled and proven by the defendants. Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674 (4th Cir. 2005).

Second, § 1997e(a) requires exhaustion of "administrative remedies" and does not require appeals through the S.C. Administrative Procedures Act (APA) process. If it did that would require a prison inmate to pursue relief from any facility's final decision all the way to the S.C. Supreme Court before bringing a § 1983 action. This pursuit of the S.C. APA process would invoke state "judicial remedies" in a § 1983 matter when Congress only intended for "administrative remedies" to be satisfied. See, Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir.)("Exhaustion under § 1997e(a) is administrative only; a prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court...."), cert. denied, 537 U.S. 949 (2002). It appears that there is no reported federal case supporting a requirement that a plaintiff pursue any type of state APA judicial review by a separate agency which is not part of the prison system before seeking relief in federal court. Instead, the administrative appellate remedies referred to in the decided cases are those provided under the

applicable prison regulations that go up the chain of command inside the agency in control of the facility. See, e.g., Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004)(Pennsylvania's system); Wyatt v. Terhune, 315 F.3d 1108 (9th Cir. 2003) (California's system); Freeman v. Francis, 96 F.3d 641(6th Cir. 1999)(Ohio's system); Martinez v. Dr. Williams R., 186 F.Supp.2d 353 (S.D.N.Y. 2002)(New York's system); Bowman v. Haynes, 282 F.Supp.2d 488 (N.D. W.Va. 2003)(West Virginia's system). Therefore, the defendants' argument on exhaustion should fail.

As to the merits of the plaintiff's contention that he has not been provided constitutionally adequate medical and dental care, the undisputed medical records and affidavits of the defendants show that the plaintiff has not demonstrated deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). Rather the records and affidavits establish that the plaintiff has received extensive care and treatment while he was at the LCDC. No health care providers or institution noted any problems with the care and treatment provided to the Plaintiff while incarcerated at the LCDC. It appears that the plaintiff desired treatment different than the treatment provided him. Disagreement over treatment does not state an Eighth Amendment claim and the defendants should be granted judgment as a matter of law. Id.

Further, to the extent that Plaintiff seeks damages for his contention that his improper medical treatment caused him mental deterioration to the point that he could not resist assaulting a correctional officer, that matter is not ripe for review. See, Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994).

As an additional ground for dismissal, it appears that the defendants in their individual capacities are entitled to qualified immunity as described in Harlow v. Fitzgerald, 457 U.S. 800 (1982), and its progeny. Further, in their official capacities, the defendants may not be sued under § 1983 for damages as they are not "persons" within the meaning of § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 64, 109 S.Ct. 2304 (1989).

Assuming that the plaintiff's § 1983 claim is dismissed by this Court and the plaintiff's complaint is viewed as bringing an additional claim for relief under any state common law theory, it appears that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## **CONCLUSION**

Accordingly, for the aforementioned reasons, it is recommended that the defendants' motion for summary judgement be

granted and any other outstanding motions be denied as moot. Additionally, it is recommended that the Court exercise its discretion to decline jurisdiction over any remaining claims based on state law.

                                  Respectfully Submitted,

                                  Robert S. Carr
                                  United States Magistrate Judge

Charleston, South Carolina

November 10, 2009

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).